# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MEARS TECHNOLOGIES, INC., § <br> § <br> Plaintif, § <br> § <br> v. § <br> § <br> FINISAR CORPORATION, § <br> § <br> Defendant. § § | CASE NO. 2:13-cv-376-JRG |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is Finisar Corporation's ("Finisar's") Motion to Transfer Venue (Dkt. No. 11). Finisar contends that the Northern District of California ("NDCA") is a more convenient forum than the Eastern District of Texas ("EDTX"). The Court, having considered the motion and related briefing, **DENIES** Finisar's motion because Finisar has failed to demonstrate that the transferee venue is clearly more convenient than the EDTX.

### II. BACKGROUND

Mears Technologies, Inc. ("Mears") is a Delaware Corporation with a principal place of business in Newton, Massachusetts. It filed suit against Finisar on May 6, 2013, alleging that Finisar's WaveShaper wavelength selective switch (WSS) products infringe United Patent No. 6,141,361 ("the '361 Patent").

Finisar is a Delaware corporation with its principal place of business in Sunnyvale, California and with established offices in Texas, Pennsylvania, and Australia. Finisar maintains

a design and manufacturing facility in Allen, Texas, within the EDTX. However, Finisar argues that the Allen facility is not used to design, manufacture or sell the accused products. Finisar sells the accused products to various customers across the US, one of which is Nu Horizons Electronics Corp ("Nu Horizons"). Nu Horizons has twelve domestic locations, including one in Plano, Texas, also within the EDTX.

## III. LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors, none of which are given dispositive weight. *Id.* The private interest factors

include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

## IV. ANALYSIS

### A. Proper Venue

The parties do not dispute, and the Court expressly finds, that this case could have been brought in the Northern District of California. The threshold inquiry has therefore been met.

### C. Private Interest Factors

#### i. Relative Ease of Access to Sources of Proof

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345.

Finisar claims that the liquid crystal on silicon ("LCoS") technology accused on infringing the '361 Patent was originally acquired by Finisar from MicroDisplay Corporation, a

now-defunct company located in Fremont, California.  Finisar argues that it expects to call two former employees of MicroDisplay, and that "to the best of Finisar's knowledge" such witnesses are located in NDCA.  Finisar further contends that the case will involve its new generation LCoS components, currently under development in Sunnyvale, California.  However, Finisar admits that it conducts work on the accused products in multiple locations, including: Fremont and Sunnyvale, California; Horsham Pennsylvania; Sydney, Australia; Tel-Aviv, Israel; and Shanghai, China.  For instance, Finisar admits that manufacture and assembly of the accused products takes place in Australia and China.  Accordingly, the Court is persuaded that Finisar's relevant documentary evidence is located in multiple locations across the globe.

Under § 1404(a), the movant bears the burden to clearly demonstrate that a transfer is "clearly more convenient" than the venue chosen by the plaintiff.  *In re Nintendo*, 589 F.3d at 1197, 1200.  Based on the evidence presented, there are certainly some sources of proof for the development of the LCoS technology in Finisar's California offices. On the other hand, the sources of proof are scattered across the United States and abroad.  Finisar has failed to identify which any real particularity which locations will provide the actual sources of proof in this case. Accordingly, the Court finds that this factor is neutral.

    ii.  *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses.  A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.  *Volkswagen II*, 545 F.3d at 316.  Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse.  *Id.*  Some of Finisar's relevant witnesses are concentrated NDCA, but Finisar has also identified potential

4

witnesses from Pennsylvania and Australia. Mears's relevant witnesses are located in Massachusetts. Neither the NDCA nor EDTX has absolute subpoena power over all the relevant non-party or party witnesses.

With respect to third-party witnesses, Finisar has identified two ex-employees of MicroDisplay, Jean-Jacques Drolet and Carlin Vieri, who are within NDCA's subpoena powers.[1] However, Finisar offers no explanation of what relevant and material information is to be obtained from said witnesses, beyond a declaration from a Finisar employee stating: "I understand that both Drs. Drolet and Vieri could testify as to the development and operation of the Accused Technology…" Declaration of John Clark ("Clark Declaration"), Dkt. No. 11-1, at ¶ 13. However, Finisar further declares that "[f]or close to the past four years, Finisar has developed new, higher resolution and density components based on the Accused technology." *Id.* at 15.

This type of nebulous speculation that some third-party witness "could" offer testimony fails to establish with necessary specificity how, if at all, compulsory process would affect this case. Moreover, Finisar's sworn statements indicate an intimate familiarity with the technology at issue, and establish that Finisar's witnesses—not third-party witnesses—will provide testimony material to the issues before the Court, namely infringement, validity and willfulness. *Id.* at ¶¶ 15, 16. Ultimately, Finisar has not shown that the availability of compulsory process weighs in favor of transfer to the NDCA; this factor is neutral.

### iii. *Cost of Attendance for Willing Witnesses*

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

---

[1] Finisar has also identified Sergei Yakovenko, but has failed to explain how his testimony is relevant to this case.

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Typically, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

However, Finisar has failed to show that the identified non-party witnesses will provide relevant and material testimony. Instead, Finisar has relied on a declaration from its employee, containing vague references to the potential non-party witnesses' knowledge concerning the operation of the accused technology. Clark Declaration, Dkt. No. 11-1, at ¶ 13. The same sworn statement indicates that said non-party testimony is likely to be duplicative of testimony from Finisar's employees. *Id.* at ¶¶ 15, 16. Having considered the briefing and supporting declarations, the Court is persuaded that it is the relative convenience of Finisar's witnesses that is the true driver of the present motion to transfer.

With respect to party witnesses, Finisar has identified both employees from its Sunnyvale offices as well as employees from its locations in Pennsylvania and Australia. Mears's willing witnesses reside in Massachusetts. Foreign and out-of-state witnesses will be equally inconvenienced by traveling to the NDCA as they will by traveling to the EDTX. Furthermore, once such travel occurs, the other costs incurred by foreign and out-of-state witnesses (e.g. food and lodging) are substantially less expensive in Marshall, Texas as opposed to San Francisco, California. *See Portal Techs. LLC v. Yahoo! Inc.*, No. 2:11-cv-440, 2012 U.S. Dist. LEXIS

110495 at *9 (E.D. Tex. August 7, 2012). Although Finisar's California witnesses may be inconvenienced by traveling to the EDTX, the Court is persuaded that this factor weighs only slightly in favor of transfer.

      *iv.*    *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011); *see also Volkswagen II,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice … [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

The Court does not find any practical problems that would justify transfer to the NDCA. To the contrary, this Court currently presides over another patent case against Finisar involving similar accused technology. The Court's familiarity with the technology at issue allows it to best preside over this action without "the wastefulness of time, energy and money that § 1404 was designed to prevent". *Volkswagen II*, 566 F.3d at 1351 (internal quotations and citations omitted). Accordingly, this factor weighs against transfer.

**D.**    **Public Interest Factors**

Of the four public interest factors recited above, the parties dispute only two: court congestion and local interest.

      *i.*    *Court Congestion*

7

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. However, where "several relevant factors weigh in favor of [or against] transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Finisar argues that the time to trial comparison between the EDTX and NDCA is "speculative," and should be found to be neutral in this venue analysis. The Court agrees.

   *ii.   Local interest in having localized interests decided at home*

The Court must also consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Finisar contends that the NDCA has a greater localized interest in this case than the EDTX because Finisar is based in Sunnyvale, California. However, while the concentration of Finisar's activities may take place in the NDCA, significant acts, including the manufacture of the accused products, occur outside of California. Moreover, Finisar maintains a substantial presence in the EDTX through its facilities in Allen, Texas. Accordingly both the NDCA and EDTX have an interest in the resolution of this case, and this factor is neutral.

## VI.   CONCLUSION

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the

8

evidence as a whole, the Court finds that this is not such a situation. Only one factor, the ease of access for potential witnesses, weighs slightly in favor of transfer. However, the Court is persuaded that the practical realities of this case and considerations of judicial economy weigh substantially against transfer. The remaining factors are neutral and on balance, Finisar has fallen short of meeting its burden to show that the NDCA would be a clearly more convenient forum than the EDTX. Accordingly, Finisar's Motion to Transfer Venue (Dkt. No. 11) is **DENIED**.

**So ORDERED and SIGNED this 24th day of April, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE